UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 26-26569-CIV-GAYLES

**JUSTIN SAWYER,**

Petitioner,

v.

**WARDEN, KROME NORTH SERVICE PROCESSING CENTER,**

Respondent.
_______________________________/

**ORDER**

**THIS CAUSE** comes before the Court on Petitioner Justin Sawyer's *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition"). [ECF No. 1]. He challenges the constitutionality of his continued immigration detention at the Krome North Service Processing Center (Krome) in Miami since March 13, 2026. *See generally* Petition. Respondent filed its Response to the Court's Show Cause Order, *see* [ECF No. 8], on October 19, 2026, [ECF No. 10]. Petitioner did not file a Reply. The Court has considered the filings and the record. For the following reasons, the Petition is **DENIED**.

## I. BACKGROUND

### A. Immigration History

Petitioner is a native and citizen of the Bahamas. [ECF No. 10 at 1] (citing Decl. of Deportation Officer [ECF No. 10-1 ¶ 5]). On November 5, 2019, United States Border Patrol apprehended Petitioner "off the coast of Florida . . . as the captain of a 25-foot Boston Whaler carrying fifteen aliens, none of whom possessed valid entry documents." *Id.* at 1–2 (citing Nov. 6, 2019, Form I-213 [ECF No. 10-2]). On November 6, 2019, Petitioner was placed in expedited removal proceedings under 28 U.S.C. § 1225(b)(1)(7)(A)(i)(I), served with a Form I-860 Notice

and Order of Expedited Removal, and charged as inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I), as an immigrant not in possession of valid entry documents. *Id.* at 2 (citing Notice and Order of Expedited Removal [ECF No. 10-16]). Petitioner provided a sworn statement to immigration authorities, expressing his fear of returning to the Bahamas. *Id.* (citing Decl. of Deportation Officer ¶ 7). Authorities found his fear credible and placed him under 8 U.S.C. § 1229(a) removal proceedings. *Id.* (citing Sept. 27, 2023, Form I-213 [ECF No. 10-5 at 3]).

On January 15, 2020, Petitioner was convicted in the Southern District of Florida for encouraging or attempting to smuggle aliens into the United States, in violation of 8 U.S.C. § 1324(a)(1)(A)(iv). *Id.* (citing Criminal History [ECF No. 10-3 at 20–25]). The court sentenced him to eighteen months' imprisonment. *Id.* On May 13, 2021, the Department of Homeland Security (DHS) placed Petitioner into removal proceedings as an inadmissible alien pursuant to 8 U.S.C. § 1182. *Id.* (citing May 13, 2021, Notice to Appear [ECF No. 10-4 at 1]). United States Immigration and Customs Enforcement (ICE) released Petitioner from custody on an order of recognizance on June 18, 2021. *Id.* (citing [ECF No. 10-5 at 3]).

On August 17, 2022, the Stuart Criminal Alien Program encountered Petitioner while he was detained at the Palm Beach County Jail for carrying a concealed weapon, bribery, and crimes against a person. *Id.* at 3 (citing Aug. 17, 2022, Form I-213 [ECF No. 10-6 at 3]). During the encounter, Petitioner explained to authorities that he is a native and citizen of the Bahamas with no lawful status in the United States. *Id.* Sometime after ICE lodged a detainer and referred Petitioner to the Alternatives to Detention program, Petitioner self-reported his affiliation with a Bahamian street gang known as "Mad Ass" and his "lengthy violent criminal history in the Bahamas." *Id.* (citing Decl. of Deportation Officer ¶ 18).

On or about October 12, 2022, Petitioner was taken into federal custody on weapons charges. *Id.* (citing [ECF No. 10-5 at 1–3]). On March 29, 2023, Petitioner was convicted in the

Southern District of Florida for unlawful transport of firearms, in violation of 18 U.S.C. § 922(g). *Id.* (citing [ECF No. 10-5 at 1–3]). The court sentenced Petitioner to twelve months and one day of imprisonment. *Id.* ([ECF No. 10-3 at 7]). On May 31, 2023, ICE Enforcement and Removal Operations (ERO) encountered Petitioner at a federal correctional institution in Pennsylvania, where he was serving his firearms sentence. *Id.* (citing [ECF No. 10-5 at 2]). Petitioner was subsequently transferred from the custody of the Federal Bureau of Prisons (BOP) to ICE custody on or about September 29, 2023. *Id.* (citing [ECF No. 10-5 at 2]).

On January 26, 2024, Petitioner appeared before an immigration court in Virginia for a competency inquiry, where the immigration judge found him not competent to represent himself and appointed a representative to aid in his proceedings.[1] *Id.* at 3–4 (citing Decl. of Deportation Officer ¶¶ 26–27). On February 27, 2024, Petitioner appeared for a master calendar hearing. *Id.* at 4 (citing Decl. of Deportation Officer ¶ 28). On March 20, 2024, the immigration judge sustained the charges of inadmissibility under § 1182, designated the Bahamas as the country of removal, and scheduled an individual hearing on Petitioner's application for relief. *Id.* (citing Decl. of Deportation Officer ¶ 29). The immigration judge held another hearing on May 23, 2024, and ordered Petitioner's removal to the Bahamas while also deferring his removal under the Convention Against Torture (CAT).[2] *Id.* (citing Decl. of Deportation Officer ¶ 31; Order of the Immigration Judge [ECF No. 10-7]).

[1] On September 29, 2023, the immigration court granted DHS's motion to change venue from Miami to the Annandale Immigration Court in Virginia. *Id.* (citing [ECF No. 10-1 ¶ 24]). Petitioner's "A-file was transferred to [the Office of the Principal Legal Advisor] Washington, D.C., and Petitioner was later housed at the Caroline Detention Facility in Virginia." *Id.* (citation omitted).

[2] "An alien who: has been ordered removed; has been found under § 1208.16(c)(3) to be entitled to protection under the Convention Against Torture; and is subject to the provisions for mandatory denial of withholding of removal under § 1208.16(d)(2) or (d)(3), shall be granted deferral of removal to the country where he or she is more likely than not to be tortured." 8 C.F.R. § 1208.17(a); *see also Nasrallah v. Barr*, 590 U.S. 573, 582 (2020) ("An order granting CAT relief means only that, notwithstanding the order of removal, the noncitizen may not be removed to the designated country of removal, at least until conditions change in that country.").

DHS filed a notice of appeal with the Board of Immigration Appeals (BIA) on October 7, 2024, likely challenging the CAT deferment. *See id.* (citing Decl. of Deportation Officer ¶ 32). On February 26, 2025, the BIA then "remanded the case to the immigration court due to the incomplete transcript, directing the [Immigration Judge] to reconstruct or retake the missing testimony as appropriate and to issue a new decision." *Id.* (citing [ECF No. 10-8 at 2]). In the interim, the United States District Court for the Eastern District of Virginia granted Petitioner's § 2241 petition and ordered that he receive a bond hearing on January 8, 2025. *Id.* (citing [ECF No. 10-10]). On January 13, 2025, the Immigration Judge denied bond, finding Petitioner a flight risk and danger to the community. *Id.* (citing [ECF No. 10-11 at 1]).

On March 4, 2025, at a subsequent bond hearing, the Immigration Judge granted Petitioner bond in the amount of $6,000, finding that DHS failed to meet its burden of establishing that Petitioner continued to pose a danger to the community or was a flight risk. *Id.* at 4–5 (citing [ECF No. 10-12 at 1]). On March 13, 2025, ICE released Petitioner from its custody after he posted bond. *Id.* at 5 (citing Decl. of Deportation Officer ¶ 37). He was enrolled in the Alternatives to Detention program with GPS monitoring and remained subject to federal criminal supervision. *Id.* (citing Decl. of Deportation Officer ¶ 38). While out on bond, Petitioner became the subject of "further federal criminal enforcement." *Id.* (citing Decl. of Deportation Officer ¶ 39). On July 11, 2025, ICE ERO received a federal criminal arrest warrant for Petitioner. *Id.* (citing Decl. of Deportation Officer ¶ 40). On July 16, 2025, ICE ERO executed the warrant at Petitioner's Florida residence and turned him over to the U.S. Marshals Service at the Palm Beach County Jail. *Id.* (citing Decl. of Deportation Officer ¶ 41).

On February 4, 2026, ICE ERO encountered Petitioner again at the Coleman Federal Correctional Institution, where he was serving a sentence for violating his federal probation.[3] *Id.* (citing Decl. of Deportation Officer ¶ 44). On February 18, 2026, following the BIA's remand, the Immigration Judge again ordered Petitioner removed to the Bahamas while granting deferral of removal under the CAT and certifying the case back to the BIA for further appellate review. *Id.* at 5–6 (citing Decl. of Deportation Officer ¶ 47). A decision from the BIA remains pending. *Id.* at 6 (citing Decl. of Deportation Officer ¶ 47).

On March 13, 2026, Petitioner was transferred from BOP custody to ICE custody at Krome. *Id.* (citing Detention History [ECF No. 10-9 at 2]). On May 14, 2026, at Petitioner's custody re-determination hearing, an Immigration Judge denied bond, finding Petitioner was subject to mandatory detention. *Id.* (citing [ECF No. 10-16 at 1]). Petitioner did not appeal the decision. *Id.* (citing Decl. of Deportation Officer ¶ 50). On June 9, 2026, at another custody re-determination hearing, an immigration judge denied bond, finding Petitioner failed to establish he was not a danger to the community. *Id.* (citing ECF No. 10-15 at 1]). Petitioner did not appeal the decision. *Id.* (citing Decl. of Deportation Officer ¶ 52). He remains in ICE custody upon resolution from the BIA. *Id.* (citing Decl. of Deportation Officer ¶ 53).

**B. The Petition**

Petitioner argues that his detention offends the Due Process Clause of the Fifth Amendment because he is now subject to unreasonably prolonged detention that "bears no reasonable relationship to any legitimate purpose, as his removal is not reasonabl[y] foreseeable." Petition at 6. He seeks only his immediate release from ICE. *Id.* at 7.

---

[3] Respondent adds that Petitioner's extensive history of mental illness and violence indicate that he would be transferred to ICE custody upon completion of his federal sentence. [ECF No. 10 at 5] (citing Decl. of Deportation Officer ¶ 46).

Repsondent argues that Petitioner's due process allegations are meritless because he "fails to concede that he had a custody redetermination and bond hearing about two months after his detention commenced on May 14, 2026, and [a] later one on June 9[,] 2026." [ECF No. 10 at 10] (citations omitted). Respondent further argues that Petitioner "fails to raise the issues raised during his bond hearings whether he was a danger to the community or a flight risk, which the Immigration Judge found to be the case." *Id.* (citation omitted).

## II. LEGAL STANDARD

District courts have the authority to grant writs of habeas corpus. *See* § 2241(a). Habeas corpus is fundamentally "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citation omitted). A writ may be issued to a petitioner who demonstrates that he is being held in custody in violation of the Constitution or federal law. *See* § 2241(c)(3). This Court's jurisdiction extends to challenges involving immigration-related detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. DISCUSSION

Upon a liberal construction of the Petition and considering the pendency of Petitioner's final order of removal, the only potentially applicable argument available to Petitioner rests on the persuasive authority of the Eleventh Circuit's now-vacated decision in *Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199 (11th Cir. 2016) ("*Sopo I*"), *vacated*, 890 F.3d 952 (11th Cir. 2018) ("*Sopo II*"). In *Sopo I*, the Eleventh Circuit identified five non-exhaustive factors for courts to consider in determining whether an individual's continued detention has become unreasonable, including: (1) the amount of time that the criminal alien has been in detention without a bond hearing, (2) reason for the protracted nature of the removal proceedings, (3) possibility of removal after there is a final order of removal, (4) whether the detention exceeds the prison time they served, and (5) whether

the facility for immigration detention is meaningfully different from a penal institution for criminal detention. 825 F.3d at 1217–19.

Following *Sopo I*, the Government petitioned for rehearing en banc; the Eleventh Circuit stayed consideration of the petition pending the Supreme Court's decision in *Jennings v. Rodriguez*, 583 U.S. 281 (2018). *Lukaj v. McAleenan*, 420 F. Supp. 3d 1265, 1271 (M.D. Fla. 2019) (citing *Sopo II*, 890 F.3d at 853), *order vacated on reconsideration*, No. 3:19-CV-241-J-34MCR, 2020 WL 248724 (M.D. Fla. Jan. 16, 2020). After the Supreme Court's decision in *Rodriguez*, the Eleventh Circuit ordered supplemental briefing, but the Government "moved to dismiss the appeal as moot based on Sopo's removal from the United States." *Id.* (citing *Sopo II*, 890 F.3d at 853). Sopo conceded that his appeal was indeed moot, and the Eleventh Circuit "dismiss[ed] the appeal and vacat[ed] its decision" in *Sopo I*. *Id.* (citing *Sopo II*, 890 F.3d at 853–54). In light of the vacatur of its holding, *Sopo I* is no longer "binding precedent in this circuit[,]" *id.*, and instead carries only persuasive authority, which the Court may consider but is not obligated to follow, *see Friends of Everglades v. S. Fla. Water Mgmt. Dist.*, 570 F.3d 1210, 1218 (11th Cir. 2009) ("Parts of decisions that are vacated . . . have no legal effect whatever." (citation omitted)).

Be that as it may, "district courts in this Circuit when confronted with these challenges continue to look to *Sopo I*'s multi-factor analysis to determine whether prolonged detention under § 1226(c)[4] does, in fact, violate an alien's right to procedural due process." *Oscar v. Ripe*, 751 F. Supp. 3d 1324, 1330–31 (S.D. Fla. 2024) (citation omitted). The Petition's threadbare arguments fail to address any of the aforementioned factors, and the Court would be justified in declining to conduct the *Sopo I* calculus. *See Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir.

---

[4] The Court and Respondents recognize that Petitioner is not detained under § 1226(c), but that *Sopo* is still applicable. *See* [ECF No. 10 at 8 n.2]; *Olivarez George v. Warden of Krome*, No. 26-21027-CV, 2026 WL 2329522, at *2 (S.D. Fla. Aug. 12, 2026) ("[C]ourts find [*Sopo I*] persuasive in evaluating whether detention under 8 U.S.C. § 1225(b) has become unconstitutionally prolonged as well." (collecting cases)).

2014) ("Yet even in the case of *pro se* litigants this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." (citation and quotation marks omitted)). Nevertheless, the Court shall proceed. *See Oscar*, 751 F. Supp. 3d at 1330–31.

**A. Time in Detention Without a Bond Hearing**

As to the first *Sopo I* factor, Petitioner has been detained since March 13, 2026, when ICE removed Petitioner from BOP custody. [ECF No. 10 at 6, 9]. But *Sopo I* held that detention *without* a bond hearing is likely reasonable for up to six months and "may often become unreasonable by the one-year mark, depending on the facts of the case." 825 F.3d at 1217 (citation omitted). Unlike the petitioner in *Sopo I*, Petitioner received multiple bond hearings. *See* [ECF No. 10 at 4–6]. Indeed, his most recent hearing occurred on June 9, 2026. [ECF No. 10-15 at 1] (denying bond because Petitioner "failed to establish that he does not pose a danger to others[.]"); *cf. Sopo I*, 825 F.3d at 1202 ("Sopo has *never* had a bond hearing." (emphasis added)). Considering Petitioner's bond hearings, the most recent taking place five months ago, the first *Sopo I* factor weighs against Petitioner.

**B. Delay in Proceedings**

Concerning the second *Sopo I* factor, Respondent contends that the prolonged nature of Petitioner's removal proceedings is attributable to his multiple requests for bond hearings. [ECF No. 10 at 10]. However, that argument cuts both ways. Although Petitioner's bond hearings have delayed his removal proceedings, at least some of the delay is attributable to Respondent's ongoing appeal to the BIA concerning Petitioner's final order of removal, which has remained unresolved since February 18, 2026. *See* [ECF No. 10 at 5–6]; *Olivarez George*, 2026 WL 2329522, at *3 (finding *Sopo I*'s second factor satisfied because the respondents' appeal of the immigration judge's order granting the petitioner's motion to terminate had remained pending for over nine

months); *see also J.N.C.G. v. Warden, Stewart Det. Ctr.*, No. 4:20-CV-62-MSH, 2020 WL 5046870, at *6 (M.D. Ga. Aug. 26, 2020) ("Petitioner appealed to the BIA nearly a year ago[.] . . . DHS filed its brief, which was two weeks overdue[.] . . . The BIA has still not rendered a decision despite both parties having moved for an expedited decision. . . . [I]t does not appear that Petitioner is in any way to blame for the delay, and instead, the blame rests entirely on the Government."). The second *Sopo I* factor weighs in Petitioner's favor.

**C. Possibility of Removal and Remaining Factors**

With respect to the third *Sopo I* factor, the Court finds that Petitioner's removal will likely occur within a reasonable period of time. The Immigration Judge's order of removal has not been challenged, only the CAT deferral of removal to the Bahamas. As that appeal has been pending since 2024 and the record has been certified back to the BIA for further review, one can reasonably expect the BIA to issue a decision soon. Petitioner's continued detention, moreover, serves the legitimate purpose in facilitating the completion of his removal proceedings. *See Oliva-Sierra v. Assistant Field Off. Dir.*, No. 26-23537-CIV, 2026 WL 1998353, at *3 (S.D. Fla. July 10, 2026) ("Petitioner has not established that his detention has become indefinite or otherwise unauthorized by statute[,]" albeit under a *Zadvydas* analysis; however, "the detention remains reasonably related to the Government's ongoing efforts to execute the final order of removal."). The third *Sopo I* factor weighs against Petitioner.

Lastly, the Court agrees with Respondent that *Sopo I*'s fourth and fifth factors are not salient to this analysis because it concerns detention under § 1226(c), which does not currently apply to Petitioner. *See* [ECF No. 10 at 8 n.2]. Even so, the length of Petitioner's immigration detention does not yet exceed the prison time he served, and Petitioner provides no evidence regarding his conditions of confinement at Krome. Finally, Petitioner's criminal history supports the Immigration Judges' findings that he is flight risk and a danger to the community. Weighing

the relevant factors together, the Court concludes that Petitioner has failed to demonstrate that his continued detention is unconstitutional or that he is entitled to any additional protections beyond those already afforded.

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED**:

1. The Petition [ECF No. 1] is **DENIED**.
2. The Clerk is **DIRECTED** to **CLOSE** the case.
3. All pending motions are **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 6th day of November, 2026.

**DARRIN P. GAYLES**
**UNITED STATES DISTRICT JUDGE**

cc: all counsel of record

**Justin Sawyer**
A201-958-948
Krome Service Processing Center
Inmate Mail/Parcels
18201 SW 12th Street
Miami, FL 33194
*PRO SE*